

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: February 6, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISABEL M. PENA

           Plaintiff,

        -against-

BOARD OF ELECTIONS IN THE CITY OF
NEW YORK,

           Defendant.

16-CV-00427 (VEC) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. VALERIE E. CAPRONI**

**BARBARA MOSES, United States Magistrate Judge.**

      Before me for report and recommendation is a motion by defendant Board of Elections in

the City of New York (BOE) to dismiss plaintiff's Second Amended Complaint (SAC) pursuant

to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, I respectfully recommend that BOE's

motion (Dkt. No. 26) be GRANTED.

## BACKGROUND

      Plaintiff describes herself as a white Latina woman, born in the Dominican Republic,

with diabetic neuropathy. SAC (Dkt. No. 24) at 3; *id.* Ex. 17 (Dkt. No. 24-5), at 2-4.[1] She was

employed as a temporary clerk at the BOE Manhattan Borough Office from October of 2010

until December of 2011 (SAC at 4, 6) and again from October of 2013 until December 19, 2014

(*id.* at 4, 9, 11), when her employment was terminated. Proceeding pro se, she alleges that during

the second term of her employment she was discriminated against based on her race, color,

national origin, and disability, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq.* (Title VII), and the New York City Human Rights Law, N.Y.C. Admin. Code

§§ 8-101 *et seq.* (NYCHRL), and that her employment was wrongfully terminated in retaliation

---

[1] Portions of the Second Amended Complaint and many of its exhibits lack page numbers or are
inconsistently paginated; in addition, certain exhibits include multiple, separately paginated
documents. For ease of reference, the page numbers used in this Report and Recommendation,
unless otherwise indicated, are the ECF page numbers that appear at the top of each page.

for, among other things, filing an employment discrimination complaint with the U.S. Equal Employment Opportunity Commission (EEOC). *Id.* at 1-2, 5, 11. The non-conclusory facts that plaintiff pleads, however, do not add up to a cognizable claim under either the federal or the New York City antidiscrimination laws. Moreover, since she expressly disclaimed any disability in her EEOC filings, she cannot now pursue a federal claim on that basis.

## I.    Procedural Background

On October 17, 2014, plaintiff filed a Charge of Discrimination with the EEOC, after initially completing an EEOC Intake Questionnaire on July 25, 2014. SAC Ex. 17, at 2-9.[2] On these forms (collectively her EEOC Complaint), plaintiff alleged that her employer discriminated against her on the basis of race, color, and national origin. EEOC Compl. at 2. She did not allege discrimination on any other basis and did not mention diabetic neuropathy or any other medical condition. In response to the question, "Do you have a disability?" plaintiff checked the box marked "no," *id.* at 3, and thereafter left all of the questions relating to disability blank. *Id.* at 5. On October 16, 2015, the EEOC issued a Notice of Dismissal and Right to Sue. *Id.* Ex. 15 (Dkt. No. 24-4), at 8-9.

On January 15, 2016, plaintiff commenced this lawsuit pro se. In her original Complaint, (Dkt. No. 2), she asserted claims of discrimination based on race, color, and national origin, as well as a retaliation claim, all pursuant to Title VII. She did not allege discrimination based on disability and did not assert any claims under state or local law.

---

[2] An Intake Questionnaire "allows an employee to provide the EEOC with basic preliminary information about herself, her employer, and the reason for her claim of discrimination, and begins the process of filing a charge of discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 305 n.2 (2d Cir. 2015) (citing *Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 566-67 (2d Cir. 2006)).

2

On May 2, 2016, plaintiff filed her Amended Complaint (Dkt. No. 17), adding allegations of discrimination on the basis of disability or perceived disability, identifying her disability as diabetic neuropathy, and asserting claims under the NYCHRL as well as Title VII. On May 31, 2016, after a conference with the parties, the Court issued an Initial Case Management Plan and Scheduling Order (Dkt. No. 22) permitting plaintiff to file a Second Amended Complaint no later than June 14, 2016, which she did.

The Second Amended Complaint asserts the same claims as the Amended Complaint but contains additional detail, much of it set forth in 20 accompanying exhibits. On July 6, 2016, defendant moved to dismiss the Second Amended Complaint in its entirety for failure to state a claim. (Dkt. Nos. 26-31.) On July 28, 2016, plaintiff filed a declaration in opposition to the motion (Dkt. No. 30), and on August 8, 2016, defendant filed its reply papers. (Dkt. No. 31).

## II.     Factual Allegations

In analyzing the sufficiency of plaintiff's allegations pursuant to Rule 12(b)(6), I consider "not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference," *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001), including her EEOC Complaint. Broadly speaking, plaintiff's allegations fall into four categories: (a) complaints about the terms of her employment, and in particular about BOE's failure to raise her wages or change her status from temporary to permanent clerk; (b) complaints relating to a hand-scanning device used as part of the "CityTime" automated employee timekeeping method, which was also the subject of a prior lawsuit by plaintiff against BOE; (c) complaints that she was denied reasonable accommodations for her disability; and (d) allegations related to what she describes as "an incessant campaign of harassment and retaliation" between September 8 and

3

December 19, 2014, which coincided with defendant's receipt of her CityTime lawsuit and her EEOC Complaint and ended with the termination of her employment on December 19, 2014. SAC at 5. For clarity, I first summarize plaintiff's factual allegations in each area, and thereafter consider the allegations specifically relating to discrimination and retaliation.

### A.   The Terms of Plaintiff's Employment

According to plaintiff, "past practice" at BOE "relative to the advancement of temporary clerks" had been to (i) assign them to "leadership position[s]," (ii) promote them from temporary to permanent status based on recommendations from leaders of the local Democratic or Republican Party county committee, and ultimately (iii) "elevate them to Administrative Assistant/Supervisor." *Id.* at 4.[3] Plaintiff does not describe how quickly a temporary clerk could expect to advance, nor what proportion could expect to succeed at each step. Nonetheless, she alleges that in her case BOE "deviated from past practice" and did so for discriminatory reasons. *Id.* In particular, plaintiff alleges, between March and December of 2014 she was removed from

---

[3] Pursuant to N.Y. Elec. Law § 3-200, the BOE consists of ten Commissioners, with two Commissioners, one from each of the major political parties, appointed from each of the five boroughs. The statute also requires equal representation of Democrats and Republicans among BOE management and staff, including clerks. *Id.* § 3-300. Plaintiff's allegation that promotion was based in part on recommendations from local party leaders is supported by a December 2013 report on BOE conducted by the New York City Department of Investigation (DOI), portions of which are attached to the Second Amended Complaint as Exhibit 1 (Dkt. No. 24-1). The entire DOI Report is available at http://www1.nyc.gov/site/doi/newsroom/public-reports.page (last visited Feb. 3, 2017). According to the DOI, BOE had a total of 891 employees as of October 2013, which is when plaintiff commenced her second term as a BOE employee. *Id.* at internal page 3. "[R]oughly 346" were permanent employees, meaning that the remaining 545 held temporary appointments. *Id.* at 3-4. The number of temporary employees varied "throughout the year and in different years based on the election cycle." *Id.* at 4 n.12. The county political committees had "a significant role in the selection of BOE personnel," both temporary and permanent: "vacant positions [were] filled based upon the recommendations of the committees," and the committees were also consulted concerning the decision to elevate a temporary employee to permanent status. *Id.* at 4. The DOI Report generally disapproved of these practices and recommended, among other things, that BOE cease making hiring decisions based upon the recommendations of the county political committees, create a standardized hiring and screening process, and adhere to New York City personnel policies used at other agencies. *Id.* at 46-47.

a leadership position, passed over for a permanent appointment, and denied a seniority-based pay increase of 59 cents per hour. In addition, she was docked eight hours pay on two separate days, and denied an overtime assignment on another day. *See* SAC at 2-3, 4-11.

### 1. Removal as Backup

Plaintiff identifies the leadership position from which she was removed as "backup" in the Registrations Department of the Manhattan BOE office. She does not further describe the position, or any privileges associated with it, except to note in passing that there was a cubicle "reserved for backup." SAC at 7. Plaintiff was "recruited" for backup on December 17, 2013 by her supervisor, Robin Walker, *id.* at 4, but was "informed and removed officially" from that position on May 8, 2014, by Gregory Lehman, Chief Clerk of the Manhattan office. EEOC Compl. at 2, 7; *see also* SAC at 4-5 (alleging that she was removed as back up on a different date, May 23, 2014). Plaintiff was told that "Greg wants a backup who's a permanent already," SAC at 4, but believes she lost the backup position "to justify not appointing me to Permanent Status" later in the year. EEOC Compl. at 7. Plaintiff was replaced as backup by Terri Drake, a permanent clerk. *Id.* Plaintiff does not provide any information about Drake's race, color, or national origin, but does acknowledge that at the time she became backup Drake had been "working as Administrative Assistant without the official title and pay for about 1-1/2 years." *Id.* Plaintiff also acknowledges that "[m]ost coworkers did not want me to be backup." SAC at 5, and "did not want to follow my direction." EEOC Compl. at 9.

### 2. Failure to Elevate to Permanent Clerk

Plaintiff applied for permanent status on March 2, 2014, "by sending an email to the Chairman of the [Manhattan] Republican Party, Daniel Isaacs." SAC at 4. According to plaintiff, Republican District Leader Frank Scala recommended her for the promotion, *id.*, and followed

5

up by having "conversations" about her with Chairman Isaacs and Chief Clerk Lehman. *Id.* at 4-5. Thereafter, a Performance Evaluation Review dated June 9, 2014, concluded that plaintiff's job performance was "above average." SAC Ex. 4 (Dkt. No. 24-2), at 2-5. However, plaintiff was "denied promotion" twice: first on June 17, 2014, when two "similarly situated individuals," Tirsia Fernandez and Robert Scott, were promoted to permanent status, and again on July 8, 2014, when two other "similarly situated individuals," Carolyn Gans and Pernell Vassell, were promoted. SAC at 4, 6.

Plaintiff provides additional information about these four individuals in a chart attached as Exhibit 2 to her Second Amended Complaint (Dkt. No. 24-1, at 6-7), and in her EEOC Complaint. Fernandez had been a temporary clerk since 2009, and became a backup to a supervisor in 2014, before she was elevated to permanent status in April 2014. EEOC Compl. at 8-9.[4] Plaintiff does not expressly allege Fernandez's race, color, or national origin, but notes that she speaks Spanish. *Id.* at 9. Scott had been a temporary clerk since 2009, and became an acting administrative assistant on an unspecified date in 2014 before he was given permanent status on July 8 of that year. *Id.*; SAC at 6. Scott is African-American. EEOC Compl. at 8. Gans had been a temporary clerk since 2010. *Id.* She is white. *Id.* There is no allegation that she held any kind of leadership position before obtaining permanent status in 2014. *Id.* Vassell had been a temporary clerk since 2009. *Id.* At some point (plaintiff does not provide a date), he became a backup, and was then given permanent status in 2014. SAC Ex. 2, at 6. Vassell is African-American. EEOC Compl. at 8.[5]

---

[4] In her current pleading, as noted above, plaintiff alleges that Fernandez was elevated to permanent status on a different date, June 17, 2014. SAC at 6.

[5] In her EEOC Complaint plaintiff names several other comparators whom she alleges generally were treated "better" or "worse" than she was, but identifies only four of them by race, color, or national origin. These four are Robin Walker (plaintiff's supervisor), Connie Harper-Castle,

### 3. Lost Wages

On May 16, 2014, and again on November 10, 2014, plaintiff lost eight hours' pay because she failed to punch in that morning. SAC at 5, 8; *id.* Ex. 5 (Dkt. No. 24-2, at 7). She believes that it was unfair to dock her wages when, she alleges, she was "on camera" and there were witnesses to her arrival at work. SAC at 5, 8.

### 4. Denial of Hourly Pay Increase

In June of 2014, Plaintiff requested a pay increase from $11.90 to $12.49 per hour. SAC at 6, 11. She believed she was entitled to the increase because she had been (or would be shortly) employed at BOE for 24 months in the aggregate and was eligible for "the $12.49 rate increase for incumbents" set forth in a collective bargaining agreement (Agreement) between BOE and Local 1183 of the Communications Workers of America (CWA). *Id.* at 6, 9, 11. Plaintiff points to section 2(b) of the Agreement, which states, "Upon completion of two (2) years of service [newly hired] employees shall be paid the indicated 'incumbent minimum' for the applicable title that is in effect on the two (2) year anniversary of their original date of appointment as set forth in the CWA, Local 1183 Agreement." SAC Ex. 20 (Dkt. No. 24-7), at 3.[6]

---

Ming Tang, and Mary Otero. Walker, who is African-American, became a temporary clerk in 2008, a permanent clerk in 2010, and an administrative assistant in in 2012. EEOC Compl. at 7-8. Harper-Castle, who is also African-American, became a temporary clerk in 2010, was placed in charge of the "2% audit" that same year, and was appointed to permanent status in 2011. *Id.* at 8. Tang, who is Asian, became a temporary clerk in 2009, obtained a leadership position in 2011, and was elevated to permanent status in 2013. *Id.* Otero, who is Hispanic, was an administrative assistant for "[m]ore than 12 yrs" but was "removed and a Temporary status black male, (Robert Scott) [was] placed in the position." *Id.*

[6] I assume, for purposes of the pending motion, that plaintiff was a CWA member and covered by the applicable CWA collective bargaining agreement. The Agreement she attaches to her pleading, however, states on page 1 that it covers a period ending on June 19, 2010 – four months before plaintiff was initially hired by BOE and four years before she was denied a pay increase. Plaintiff does not allege that the Agreement was extended or otherwise remained in effect during her employment. Moreover, the Agreement does not resolve the question of how to calculate the requisite two years of service. Under an analogous provision, calling for

BOE denied her the rate increase on the ground that two *consecutive* years of service were required to qualify. SAC at 6, 9. Plaintiff disputes this point. It was her "understanding" that "accumulated time with the City is never lost." *Id.* at 6. She points out that her "city start date of service October 11, 2010 never changed," *id.* at 9, meaning that her CityTime "profile" continued to show a "City Start Date" of "10/11/2010" even though she left the BOE in December 2011 and returned 22 months later in October 2013. SAC Ex. 13 (Dkt. No. 24-3), at 11.

There is no indication in the pleadings that plaintiff ever discussed this issue with her union representatives or sought a ruling through the grievance process outlined in the Agreement. Instead, she alleges generally that BOE "adjust[ed] the rates of other employees on a timely basis." SAC at 9. However, she does not identify any other employee – of any race, color, or national origin – who was given the "incumbent" raise after two aggregate years of employment interrupted by a lengthy break in service. *See* SAC Ex. 2, at 6-7.

### 5. Denial of Overtime on July 18

On July 18, 2014, plaintiff was "denied access to overtime" by her supervisor, Walker. When asked why she was not getting any overtime that day she was told "they only wanted a few." SAC at 6. Plaintiff provides no further details regarding this event.

### B. CityTime

The CityTime system is an "automated timekeeping system," used widely at New York City agencies, under which employees "generally 'punch-in' by using a data collection device such as a hand scanner or an internal web clock, which automatically record attendance times

---

"longevity" raises for employees with five, 10, and 15 years of service, the parties specified in an addendum that any period of employment "prior to any breaks in service of more than one year shall not be used to calculate the 5, 10, and 15 years of service." SAC Ex. 20 (Dkt. No. 24-10), at 5.

pending the input of a personalized code and/or password." DOI Rep. at 11 & n.20. According to the DOI Report, "time abuse" was a major disciplinary problem at BOE, where CityTime was not yet in use. As late as 2013 the agency still relied on "punch cards and paper leave slips." *Id.* at iii, 11. DOI recommended, among other things, that BOE "use an automated time-keeping system." *Id.* at 48.

BOE implemented CityTime in the fall of 2014, prompting plaintiff to file a lawsuit. She does not attach any of her own papers from that lawsuit, but she does attach an affirmation, dated September 5, 2014, filed by BOE in opposition to her application for a temporary restraining order and preliminary injunction to prevent BOE from requiring her to use a CityTime hand scanning device. SAC Ex. 18 (Dkt. Nos. 24-5 and 24-6). BOE asserted, among other things, that no fingerprint data would be collected but that, in any event, it "intends to promulgate a policy that will allow an employee to seek exemption from the hand scanning requirement and, in the alternative, use a computer terminal to sign into work." *Id.* ¶ 11.[7]

On December 4, 2014, plaintiff "requested exemption from [ ] using biometric clock," SAC at 8; *see also id.* Ex. 19 (Dkt. No. 24-6, at 5). On December 5, 2014, plaintiff was called in to a meeting with Acting Deputy Alvin Samuels, Administrative Associate Trevor Worrell, and two union representatives, during which Samuels "read an email in his possession" from BOE Executive Director Michael Ryan, "basically relating to me of serious consequences to follow including termination if I continued opposing the hand scanner." SAC at 10. Plaintiff asked for a

---

[7] No TRO or preliminary injunction was ever issued, and plaintiff's CityTime lawsuit was ultimately dismissed. SAC at 10. In *Pena v. Board of Elections of the City of New York*, Index. No. 401127/14 (N.Y. Supr. Ct., N.Y. Co. Apr. 23, 2015), the court held that plaintiff "wholly failed to state a cause of action." Slip op. at 2. The court explained that "defendant is merely requiring plaintiff to use her handprint for noninvestigatory, work-related purposes," that plaintiff "was not targeted alone," and that New York's Personal Privacy Protection Law did not apply, since, among other things, "the new time clock does not take, record, transmit, or otherwise use an employee's fingerprints." *Id.*

copy of the email but was given one that "did not match the wording read from the email by Mr. Samuels at the meeting." *Id.* Plaintiff attaches a copy of an email from Ryan dated December 8, 2014 – three days after the meeting she describes – which says nothing about serious consequences or termination. Instead, it states, "An individual employee's preference does not qualify as adequate reason to alter the agency-wide method for accounting for time records. As such, the initial determination to deny Ms. Pena's request remains unchanged." SAC Ex. 11 (Dkt. No. 24-3, at 7).

From December 8 to 19, 2014, plaintiff "kept track of [her] time on outlook calendar" rather than use CityTime. SAC at 10. Plaintiff was never paid for those two weeks. *Id.*

## C. Reasonable Accommodations

Although plaintiff denied any disability in her EEOC Complaint, she alleges in the present lawsuit that she was denied reasonable accommodations for her diabetic neuropathy on October 21, 2014. SAC at 2-3, 7. On that day plaintiff's supervisor, Walker, informed her that the Registration unit would be working at the Voting Machine Facility (VMF) for several days. SAC Ex. 9 (Dkt. No. 24-3, at 3). Plaintiff said that she could not perform the physical work required at the VMF, which she describes as "load[ing] the supply carts, stuff[ing] the gray transport bags and review[ing] poll list books." *Id.* Walker then told plaintiff that she would not be able to work overtime "on the days we are located at the VMF." *Id.*; *see also* SAC at 7. Plaintiff asked about overtime work "with Poll Worker," presumably another unit at BOE. SAC Ex. 9. Walker responded, "No the overtime is at the VMF." *Id.* Over the next several days plaintiff "was allowed to stay and work at my cubicle at the [Manhattan] office but not work overtime." Pl. Opp. Decl., filed July 28, 2016 (Dkt. No. 30), at 3.

The pleadings do not disclose whether plaintiff provided her supervisor with any documentation concerning her disability or, for that matter, whether she ever informed her

10

supervisor that she had diabetic neuropathy. The only medical documentation in the record is an unsigned note dated September 8, 2014, on the letterhead of Dr. Veronica Zaharia, MD, which plaintiff alleges that she submitted to various BOE personnel that day. SAC at 6. The September 8 note states in full: "Do [sic] to medical reasons Ms. Isabell [sic] Pena must refrain from any Physical [sic] activities and walking back and forth on concrete floors." SAC Ex. 6 (Dkt. No. 24-2, at 9). It does not mention diabetic neuropathy or any other diagnosis.[8]

In a grievance filed the next day, plaintiff characterized the October 21 incident as "coercion, harassment, and abuse of authority with total disregard for employees' safety," SAC Ex. 9, and complained that "overtime was dangle[d] in my face in an effort to get me to defy doctor's orders for the sake of overtime." *Id.* In her current pleading she alleges that two "similarly situated" individuals, Lisa Baratta and Tyletha Samuels, "were accommodated" after they submitted doctors' notes "by reassignment to another department and [were] allowed [to] work overtime in [the] other department." SAC at 7. Plaintiff's pleadings do not provide any further information concerning the accommodations extended to Baratta and Samuels.

### D. Harassment and Retaliation

Plaintiff alleges that she was the victim of an "incessant campaign of harassment and retaliation" perpetrated on her between September 8, 2014 and December 19, 2014, following her CityTime suit and EEOC Complaint. SAC at 5. In addition to the incidents detailed above, the campaign consisted of requiring plaintiff to (i) provide reasons for three requests to leave

---

[8] Elsewhere in her Second Amended Complaint plaintiff alleges that Walker was "aware of my medical condition as far back as 2011" because she visited plaintiff in the hospital that year, and thereafter had "numerous conversations" with plaintiff about diet and nutrition for diabetics. SAC at 9. In addition, plaintiff "often injected insulin while sitting in my cubicle in plain view where everyone could see me." *Id.* Although these allegations, if proven, would demonstrate that plaintiff's employer knew generally that she was diabetic, they do not show that BOE was aware of her alleged disability, which was diabetic neuropathy.

work early and (ii) swap cubicles with another employee. *Id.* at 6-7. Plaintiff filed grievances regarding each of these incidents, without relief. *See id.* Exs. 7-9 (Dkt. No. 24-2, at 11, Dkt. No. 24-3, at 1). The campaign culminated in the termination of her employment on December 19, 2014.

On September 8, 14 and 22, 2014, plaintiff requested permission to leave work early for unspecified "personal business," but BOE personnel instructed her to state a more specific reason for her request. SAC at 6-7, *id.* Ex. 7. On September 8, she was told that she could only leave "if its medical and you need a doctor's note when you return." SAC at 6. On September 14, she was told she needed a "reason for the request." *Id.* On September 22 she was told, "you cannot indicate personal business; you must indicate why you need to leave early." *Id.* at 7. It appears that on each date plaintiff was granted the leave she sought after providing a more specific reason for her request.[9] Nonetheless, on September 22, 2014, she submitted a written grievance about all three incidents. *Id.* Ex. 7. In her grievance she stated that being required to give a reason for leaving early was an "abusive" invasion of her privacy and that "[t]his is a hostile work environment." *Id.* In her EEOC Complaint plaintiff alleges that a "similarly situated co-worker requested and was granted leave," EEOC Compl. at 2, but provides no other details.

On October 16, 2014, supervisor Walker asked plaintiff to swap cubicles with another BOE employee, apparently to mitigate an interpersonal problem between that employee and a third person. *See* SAC at 7; *id.* Ex. 8. Plaintiff resisted, protesting that other employees had received their cubicle assignments more recently and that they should be required to swap

---

[9] On September 8, plaintiff was "able to squeeze in to see my doctor and get note just so that I could leave work to take care of personal business." SAC Ex. 7. That is apparently the day on which she obtained the unsigned note on the letterhead of Dr. Zaharia. *Id.* Ex. 6. On September 14, plaintiff changed her request to read, "because in current week I worked over 65 hours and need to rest." *Id.* On October 22, she changed her request to read "appointment" and "it was approved." SAC at 7.

12

instead of her. Nonetheless, plaintiff was made to change cubicles. SAC at 7. The cubicle she reluctantly vacated was "reserved for backup," *id.*, but plaintiff does not otherwise allege that it was superior in any way to her new one. Nonetheless, she submitted a grievance asserting that the cubicle swap was "discriminatory," constituted "harassment," and created a "hostile work environment." *Id.*; *see also id.* Ex. 8.

On December 19, 2014, plaintiff received a letter stating that her employment was terminated. SAC at 11, *see also id.* Ex. 12 (Dkt. No. 24-3, at 9). The letter does not provide any reason for the termination. On the same date, "new people were hired" as temporary clerks, and existing temporary clerks were "upgraded to permanent status," including some "with disciplinary action in their files." SAC at 11.[10] Plaintiff contends that BOE wrongfully terminated her employment "without cause and without due process," and that it did so "[i]n response to my protected complaints of discrimination." *Id.* at 11.[11]

### E.   Discrimination

Plaintiff does not allege any explicitly discriminatory treatment by any of her supervisors, nor any statements or remarks by them concerning race, color, national origin, or disability. She does allege, in her EEOC Complaint, that she was asked by one co-worker, "jokingly, 'on which boat did I come,'" EEOC Compl. at 9, but she does not identify the co-worker either by name or by position and does not suggest that he or she was in a position of authority. Plaintiff also

---

[10] In her original Complaint, plaintiff explicitly acknowledged that she was not the only temporary clerk whose employment was terminated on December 19, 2014. "[A]lso on this day, the Board hired new employees, *let go of others* and returned some of the same situated similar situated [sic] employees." Compl. at 25 (emphasis added). This acknowledgment does not appear in her current pleading.

[11] Although the body of the Second Amended Complaint alleges that plaintiff was terminated in retaliation for filing her EEOC Complaint, the grievance that she submitted on January 30, 2015 asserted that she was fired in retaliation for the EEOC Complaint "and because of the civil case I brought against the BOE in New York County Supreme Court." SAC Ex. 14 (Dkt. No. 24-4, at 6). Plaintiff also asserted that Local 1183 had failed to protect her interests. *Id.*

asserts that "[t]he perception is that Hispanics are less competent than African American or Whites," *id.*, but does not explain what basis she has for asserting the existence of such a perception, who shares the perception, or how it affected her employment.

The "perception" allegation appears at the end of a list, entitled "hostile environment," detailing a number of perceived slights or instances of incivility, many of them from co-workers. *Id.* For example, plaintiff alleges that that "[s]ome staff stopped talking to me and made face [sic] when issuing tasks." *Id.* Other than the "which boat did I come on" comment, however, none of the items on the list even arguably suggests a discriminatory animus. Moreover, some of them reveal affirmative efforts by plaintiff's supervisors to enhance her status in the workplace. For example, plaintiff alleges that when other employees found out she was named as a backup, "they did not want to follow my direction and demanded department supervisors make an official announcement." *Id.* Plaintiff's supervisors agreed, and made the requested announcement at a staff meeting. *Id.* Similarly, in her current pleading, plaintiff alleges that "[m]ost co-workers did not want me to be backup," but specifies that "this was lead [sic] by Lisa Baratta and Nadine Nadram," who are not alleged to be in positions of authority with respect to plaintiff. SAC at 5. Supervisor Walker, on the other hand, is alleged to have told a supervisor in a different department, "You have to work with her," presumably meaning plaintiff. *Id.*

Notwithstanding plaintiff's detailed allegations concerning mistreatment by her co-workers, she insists in her opposition declaration that she does "not allege [that] my colleagues discriminated against me or that they created a hostile work environment, but rather 'management' committed negative actions against me that were discriminatory, and created a hostile work environment." Opp. Decl. at 2. She then lists, once again, all of the incidents alleged

14

in her pleading, and as to each one states that a "lame and not credible explanation" was given for a decision that, in her view, was part of a discriminatory campaign against her. *Id.* at 3.

## F. Retaliation

Other than the alleged email from Executive Director Ryan – which according to plaintiff was read to her on December 4, 2014 but never given to her in that form, *see* SAC at 10 – plaintiff's retaliation theory appears to be based entirely on the timing of her termination and the incidents leading up to it. Opp. Decl. at 3. As noted above, plaintiff has contended at various times that BOE retaliated against her both for the CityTime lawsuit and for her EEOC charge.

## DISCUSSION

## I. Standard for Motion to Dismiss Pursuant to 12(b)(6)

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The trial court must accept as true all non-conclusory factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The non-conclusory factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Similarly, Rule 8 does not require

15

"'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).

Where, as here, the plaintiff is pro se, her complaint must be construed "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests." *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (*citing Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (internal quotations and citations omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In her Second Amended Complaint, plaintiff asserts express claims for employment discrimination on the basis of race, color, national origin, and disability. SAC at 1, 3. She also checked the applicable box for "[f]ailure to accommodate my disability." *Id.* at 2. Applying *T'Kach*, I construe her pleading liberally to assert that she was subject to disparate treatment and a hostile work environment in violation of Title VII and the NYCHRL; that BOE failed to reasonably accommodate her disability in violation of the NYCHRL;[12] and that her employment

---

[12] Plaintiff cannot bring a federal claim for failure to accommodate her alleged disability because she never raised her disability-related allegations at the EEOC – in fact, she denied any disability, *see* EEOC Compl. at 3 – and therefore failed to exhaust such claims. *See* 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a): *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) ("Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency."). "[I]f nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

16

was unlawfully terminated in retaliation for protected activity, including filing her EEOC Complaint, in violation of Title VII and the NYCHRL.[13]

## II.   Title VII

### A.   Disparate Treatment

Pursuant to a line of cases beginning with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff establishes a prima facie claim of employment discrimination under Title VII if she shows: "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn,* 795 F.3d at 307. If plaintiff establishes her prima facie case, the burden shifts to the defendant employer, which must present evidence of a non-discriminatory reason for the adverse employment action. *Id.* If the employer meets its burden of production, the presumption of discriminatory motivation "'drops out of the picture' and the

---

[13] Plaintiff cannot bring a claim under Title VII or the NYCHRL for retaliation based on her filing of the CityTime lawsuit, because that lawsuit was not a "protected activity" under the discrimination statutes. *See* 42 U.S.C. § 2000e-3(a); N.Y.C. Admin. Code § 8–107(7). I have considered whether plaintiff could bring such a claim under 42 U.S.C. § 1983, for deprivation of her First Amendment right to petition the government for redress, but have concluded that a § 1983 claim would fail. First, her CityTime suit, which she brought solely on her own behalf, raised a "private" rather than a "public" concern. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398-99 (2011) (Petition Clause does not give public employees "a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts"); *Lakner v. Lantz*, 547 F. App'x 13, 16-17 (2d Cir. 2013) (summary order) (affirming summary judgment against plaintiff because his prior lawsuit, for which he claims he was fired, was not "a matter of public concern"). Second, plaintiff has not even begun to allege the facts necessary to state a § 1983 claim against a municipality. Such a claim requires a showing that the plaintiff's injury was caused by an "'action pursuant to official municipal policy.'" *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Plaintiff does not make any allegations that BOE, or the City of New York, regularly retaliates against employees who file lawsuits as a matter of custom, policy or practice.

17

*McDonnell Douglas* framework 'is no longer relevant.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)).

The *Iqbal* "plausible support" standard applies to all four elements necessary to make out a prima facie case under Title VII. With regard to the fourth element, however, the plaintiff need only plead "facts supporting a minimal plausible inference of discriminatory intent." *Columbia Univ.*, 831 F.3d at 54-55. *See also Littlejohn*, 795 F.3d at 311 ("The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation."). Accordingly, to survive a Rule 12(b)(6) motion, a Title VII plaintiff must allege facts that "plausibly support[]" the elements of a Title VII claim: "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

The parties do not dispute that, as an Hispanic woman born in the Dominican Republic, plaintiff Pena is a member of a protected class. *See* Def. Mem. of Law, dated June 30, 2016 (Dkt. No. 27), at 6. Nor does defendant challenge – for purposes of the pending motion – the sufficiency of her allegations regarding her qualifications or the adverse employment actions that she claims to have suffered. *Id.*[14] Rather, BOE argues that plaintiff has failed to plead facts that

---

[14] For the purposes of a Title VII discrimination claim by a plaintiff who was already employed, the Second Circuit defines an "adverse employment action" as a "materially adverse change in the terms and conditions of employment." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (summary order) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Employment actions that the Second Circuit has "deemed sufficiently disadvantageous to constitute an adverse employment action" include: "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices

provide plausible support for even a minimal inference that those adverse actions were "motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. I agree.

A Title VII plaintiff cannot raise the necessary inference of a discriminatory motivation simply by sprinkling the word "discriminatory" liberally throughout her pleading. Such a plaintiff may attempt to satisfy her pleading burden by alleging specific discriminatory remarks by her supervisors (or others responsible for the adverse employment actions taken against her); however, "remarks made by someone other than the person who made the decision adversely affecting the plaintiff" are generally not sufficient, as they "have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). Plaintiff Pena does not allege a single discriminatory remark by any of the BOE personnel responsible for the decisions to which she objects, nor, for that matter, by anyone in a position of authority at BOE. The single comment she describes in her pleading was made by an unidentified coworker, who "jokingly" asked her "on which boat did I come." EEOC Compl. at 9. This allegation does not raise a plausible inference that plaintiff's supervisor or other decision-makers at BOE were motivated by discrimination. Plaintiff's vague assertion regarding the "perception" that "Hispanics are less competent than African American or Whites," *id.*, is of even less help, as it is completely

---

unique to a particular situation." *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 56 (2d Cir. 2016) (summary order) (quoting *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008)). Conversely, a "mere inconvenience or an alteration of job responsibilities" does not suffice. *Day v. City of N.Y.*, 2016 WL 1171584, at *3 (S.D.N.Y. Mar. 22, 2016) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Under this standard, many of the incidents alleged by plaintiff do *not* constitute "adverse employment actions." Losing a single day's pay for failure to punch in, being told that no overtime was available on another day, and being directed to switch cubicles, for example, cannot plausibly be characterized as "sufficiently disadvantageous to constitute an adverse employment action." *Fahrenkrug*, 652 F. App'x at 56.

unsupported. *See Twombly*, 550 U.S. at 555 ("labels and conclusions" cannot substitute for the facts needed to state a plausible claim).

Nor does plaintiff raise a plausible inference of discrimination by alleging that other BOE employees were treated better than she was. Allegations of "preferential treatment given to similarly situated individuals" can raise such an inference, but only if the "alleged comparators are similarly situated in all material respects." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012) (internal quotations and citations omitted). To determine whether a colleague is similarly situated for the purposes of inferring discrimination, the court should consider "attributes of employment which may form the basis for comparison," such as "whether the plaintiff and comparator are subject to the same supervisory authority, engaged in the same conduct, were held to the same standards and held comparable positions." *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 504 (S.D.N.Y. 2009).

Although plaintiff frequently uses the label "similarly situated" to describe the coworkers who, in her view, received better treatment than she did, she fails to support that label with the necessary facts. For example, three of the four "similarly situated" workers who were given permanent status in 2014 – Fernandez, Gans, and Vassell – began as temporary clerks in 2009, a year earlier than plaintiff. *See* EEOC Compl. at 8. Moreover, even if all four were assumed to be similarly situated with regard to seniority and skills, plaintiff's allegations would not support the conclusions she seeks to draw, either as to the necessity of a "leadership position" as a predicate to permanent status (Gans held no such position before her permanent appointment) or as to discrimination against Hispanic workers (Fernandez was apparently Hispanic). *Id.*[15]

---

[15] Plaintiff's presentation of selected data concerning selected additional comparators, both in her EEOC Complaint (at 7-9) and in a chart attached to her current pleading (as Ex. 2), raises significant questions concerning how those individuals were chosen – out of the more than 500

Since plaintiff's minimal allegations of discriminatory intent are conclusory and unsupported by the concrete facts she alleges, she has not "creat[ed] a plausible inference of any discriminatory conduct." *Gertskis v. U.S. E.E.O.C.*, 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013), *aff'd sub nom. Gertskis v. E.E.O.C.*, 594 F. App'x 719 (2d Cir. 2014) (summary order). I therefore conclude that plaintiff has failed to state a claim under Title VII for employment discrimination on a disparate treatment theory, and I respectfully recommend that the District Judge dismiss that claim. *See Williams v. Wellness Med. Care, P.C.*, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) (dismissing claims where plaintiff offered only "conclusory and speculative allegations regarding Defendants' motive" and therefore lacked "sufficient facts to establish a plausible claim under Title VII").

**B.      Hostile Work Environment**

To prevail on a Title VII hostile work environment claim, a plaintiff must show that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The problematic conduct must be "severe or pervasive enough that a reasonable person would find it hostile or abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citation omitted). In addition, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment . . . there must be more than a few

---

temporary employees at BOE, *see* DOI Rep. at 3-4 – for inclusion on a small list of "similarly situated" workers. Some of them are fairly clearly *not* similarly situated. Robin Walker, for example, had been employed at BOI since 2008, was promoted to administrative assistant in 2013, and was plaintiff's direct supervisor. SAC Ex. 2, at 6-7. In addition, Walker was a Democrat, *id.*, which – according to plaintiff and to the DOI – was highly relevant, at the time, for hiring and promotion decisions. It thus seems probable that plaintiff chose her comparators strategically rather than scientifically.

isolated incidents of racial enmity." *Orlando v. Dep't of Transp., Comm'r*, 459 F. App'x 8, 9-10 (2d Cir. 2012) (summary order) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.,* 580 F.3d 73, 83 (2d Cir. 2009)).

In addition, a Title VII hostile work environment claim "'is actionable . . . only when it occurs because of an employee's . . . protected characteristic.'" *Bliss v. MXK Rest. Corp.*, 2016 WL 6775439, at \*2 (S.D.N.Y. Nov. 14, 2016) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). If the plaintiff cannot establish a causal link between the allegedly offensive conduct and the protected characteristics on which her discrimination claims are based, the allegations "cannot support a claim for a hostile work environment." *Id.* "Title VII is not a 'general civility code for the American workplace;' it prohibits only harassment that is discriminatory." *Marshall v. N.Y.C. Bd. of Elections*, 322 F. App'x 17, 18-19 (2d Cir. 2009) (summary order) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Plaintiff Pena does not adequately allege a hostile work environment. She describes a single remark, made "jokingly" by a co-worker, that arguably denigrated her Dominican origin, but beyond that alleges no racially-charged or otherwise discriminatory ridicule, slurs, or insults, much less the kind of "severe or pervasive" conduct, *Raspardo,* 770 F.3d at 114, that is actionable under Title VII. Many of the incidents that plaintiff characterizes as "abusive" – such as being docked pay for failing to punch in and being told to state a reason for leaving work early – appear to be nothing more than the application of routine workplace rules and norms to an employee who does not believe that those rules and norms are fair. I therefore conclude that plaintiff has failed to state a claim under Title VII for employment discrimination on a hostile work environment theory, and I respectfully recommend that the District Judge dismiss that claim as well.

## C.    Retaliation

Section 704(a) of Title VII includes an anti-retaliation provision that makes it unlawful for an employer to discriminate against an employee because she "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in any manner" in a Title VII investigation, proceeding or hearing. 42 U.S.C. § 2000e-3(a). Plaintiff alleges that she was subjected to "an incessant campaign of harassment and retaliation" from September to December of 2014, culminating in the termination of her employment, in retaliation for filing her EEOC Complaint on October 18. *See* SAC at 5, 11.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). Incidents that are "'trivial harms' – i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience' – are not materially adverse" for the purposes of Title VII's anti-retaliation provision. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006)).

Filing an EEOC charge is a "protected activity" for purposes of a retaliation analysis, but in this case plaintiff did not do so until October 17, 2014, *see* EEOC Compl. at 2, and does not allege that BOE had any knowledge of the preliminary questionnaire she completed on July 25, 2014, *see id.* at 6. She therefore cannot base a Title VII retaliation claim on any BOE conduct prior to October 17, 2014. As BOE points out in its memorandum of law, the earlier incidents cited as discriminatory by plaintiff – through and including the reassignment of her cubicle on October 16, 2014 – are not "temporally possible" retaliatory acts under Title VII. Def. Mem. of

Law at 13-14. That leaves three potentially actionable incidents: the wage deduction for failure to punch in on November 10, 2014; the denial of her request for an exemption from the CityTime hand scanning requirement on December 8, 2014 (and nonpayment of wages thereafter when she refused to use CityTime); and the termination of her employment on December 19, 2014.

As to these events, plaintiff fails to allege any facts that suggest a retaliatory motive on the part of BOE. To the contrary: plaintiff acknowledges that the reason she did not get paid on November 10 was her failure to punch in that morning. SAC at 8. The same thing happened, for the same reason, six months earlier on May 16 – long before she engaged in any protected activity. *See id.* at 5. Similarly, the reason she was not paid for two weeks in December was her refusal to use the CityTime hand scanner. *See* SAC at 10; *id.* Ex 19. There is no suggestion in the record that BOE treated plaintiff any differently in this regard from other employees. Similarly, nothing in the Second Amended Complaint or its attachments – other than her frequent use of the word "retaliation" – suggests that the termination of plaintiff's temporary position (which had been terminated once before, also after 15 months of work, and also in December) was engineered in response to her filing of an EEOC complaint more than two months earlier. *See Walcott v. Cablevision*, 2012 WL 4447417, at *14 (E.D.N.Y. Sept. 24, 2012) ("a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation") (quoting *Garrett v. Garden City Hotel, Inc.*, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007)).[16] For these reasons I respectfully recommend that the District Judge dismiss plaintiff's Title VII retaliation claim.

---

[16] As the DOI noted in its December 2013 report, "the number of temporary employees working at the BOE varies throughout the year and in different years based on the election cycle." DOI Rep. at 4 n.12. Plaintiff's first term of temporary employment with BOE began in October 2010 and ended in December 2011. SAC at 6. Her second term began in October 2013 and ended in December 2014. *Id.*

24

## III. NYCHRL

Under the NYCHRL, claims are construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Courts are required to "analyze NYCHRL claims separately and independently from any federal and state law claims." *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (per curiam) (quoting *Mihalik*, 715 F.3d at 109).

### A. Disparate Treatment

Unlike Title VII, the NYCHRL "does not require 'a connection between the discriminatory conduct'" and a specific "'materially adverse employment action.'" *Garrigan v. Ruby Tuesday, Inc.*, 2014 WL 2134613, at *3 (S.D.N.Y. May 22, 2014) (quoting *Mihalik*, 715 F.3d at 114). Instead, the inquiry under the NYCHRL is "whether a plaintiff "was treated 'less well'" because of her membership in a protected class. *Richards v. N.Y.C. Dep't of Educ.*, 2015 WL 4164746, at *10 (S.D.N.Y. July 10, 2015) (quoting *Mihalik*, 715 F.3d at 111). However, district courts must be mindful that the NYCHRL, like Title VII, "is not a 'general civility code.' The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 79, 872 N.Y.S.2d 27, 40-41 (1st Dep't 2009)). Moreover, when a NYCHRL claim is brought in federal court, federal pleading rules apply. *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 576 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) (summary order); *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012).

Plaintiff Pena has not alleged facts sufficient to show that she was "treated less well" because of her race, color or national origin, as required to state a claim under the NYCHRL. Whether or not the events she complains of are characterized as adverse employment actions for

25

Title VII purposes, she has failed to allege facts from which it could plausibly be inferred that she was treated less well than other temporary clerks at BOE because of her membership in a protected class. I therefore recommend that the District Judge dismiss plaintiff's disparate treatment claim under the NYCHRL as well as under Title VII. *See Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 160 (E.D.N.Y. 2015) (where plaintiff "failed to allege plausible claims under each of her federal claims" because she "does not allege a plausible discriminatory or retaliatory motive," her NYCHRL claims must also be dismissed "for failure to state a plausible claim upon which relief may be granted").

## B.    Hostile Work Environment

To state a hostile work environment claim under the NYCHRL, plaintiff must "show that her employer treated her less well than other similarly situated employees, at least in part for discriminatory reasons." *Richards*, 2015 WL 4164746, at \*12. Unlike Title VII, the NYCHRL "imposes liability for harassing conduct that does not qualify as 'severe or pervasive.'" *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Williams*, 61 A.D.3d at 71). However, "'petty, slight, or trivial inconvenience[s]' are not actionable." *Kumaga v. N.Y.C. Sch. Const. Auth.*, 27 Misc. 3d 1207(A), 910 N.Y.S.2d 405 (Table) (N.Y. Sup. Ct. 2010) (quoting *Williams*, 61 A.D.3d at 80).

Moreover, a NYCHRL plaintiff must still allege a causal connection between the harassing conduct and her protected status. *See Lennert-Gonzalez v. Delta Airlines, Inc.*, 2013 WL 754710, at \*8 (S.D.N.Y. Feb. 28, 2013) ("workplace hostility" is not actionable under the NYCHRL "unless it is due to plaintiff's membership in a protected class"); *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 451 (E.D.N.Y. 2013) (under the NYCHRL "a plaintiff must still establish that she suffered a hostile work environment *because of*" her membership in a

26

protected class) (emphasis in the original). "Personal animus" is "insufficient to establish a claim under Title VII . . . or the NYCHRL." *Lennert-Gonzalez*, 2012 WL 754710, at \*8.

Plaintiff Pena does not state a hostile work environment claim under the NYCHRL because the hostile conduct she alleges constitutes at most "petty slights and trivial inconveniences," *Williams*, 61 A.D. at 80, and because she alleges no facts from which it can be plausibly inferred that she suffered those slights *because of* her race, color, or national origin. *Russo*, 972 F. Supp. 2d at 451. I therefore respectfully recommend that the District Judge dismiss this claim as well.

## C. Retaliation

The NYCHRL, like Title VII, prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). To prevail on a retaliation claim under the NYCHRL, "plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted). As under Title VII, plaintiff must "link [the complained-of actions] to a retaliatory motivation." *Williams*, 61 A.D.3d at 71 (dismissing plaintiff's NYCHRL retaliation claims).

In *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (summary order), the court upheld a grant of summary judgment to the defendant employer on plaintiff's federal, state, and local retaliation claims, because she produced no evidence of a "causal connection" between her protected activity and the events she characterized as retaliatory. The court expressly acknowledged that in certain respects "the standard governing retaliation claims under the NYCHRL is different (and broader) than that applicable claims under federal and state

27

law." *Id.* at 110 n.1. The lack of causation evidence, however, was fatal as to all three theories. *Id.*

Plaintiff Pena's retaliation claim under the NYCHRL fails as a matter of law because, after three tries, she has not alleged any facts from which it can plausibly be inferred that BOE terminated her employment, docked her pay, or otherwise acted against her in retaliation for her EEOC charge or for engaging in any other protected activity. I therefore respectfully recommend that her NYCHRL retaliation claim be dismissed.

## D.    Disability

To state a prima facie claim for failure to accommodate a disability under the NYCHRL, plaintiff must adequately allege: (1) that plaintiff is a person with a disability; (2) that her employer had notice of her disability; (3) that with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) that the employer has refused to make such accommodations. *See Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016); *Snowden v. Trs. of Columbia Univ.*, 612 Fed. App'x 7, 10 (2d Cir. 2015) (summary order); *Miloscia v. B.R. Guest Holdings LLC*, 33 Misc. 3d 466, 474, 928 N.Y.S.2d 905, 913 (N.Y. Sup. Ct. 2011), *aff'd in part, modified in part*, 94 A.D.3d 563, 942 N.Y.S.2d 484 (2012).

NYCHRL disability claims – unlike such claims brought under federal law – need not be exhausted as the agency level prior to suit. *See* N.Y.C. Admin. Code §§ 8-109(a), 8-502(a). However, Pena has failed to allege facts sufficient to meet two of the four elements required for such a claim: that her employer had notice of her disability – in this case, diabetic neuropathy – or that it refused to make a reasonable accommodation.

Plaintiff alleges that her supervisor and others at BOE knew that she had diabetes, *see, e.g.*, SAC at 9, but she does not plead any facts from which it could reasonably be inferred that

28

they were on notice of the distinct condition that constituted her disability; that is, diabetic neuropathy, which is what allegedly made accommodations necessary when other workers in her unit were asked to load supply carts, stuff transport bags, and review poll list books at the VMF. SAC Ex. 9, at 3.[17] Under the NYCHRL, "the initial burden of requesting an accommodation is on the employee unless the disability is 'obvious or otherwise known to the employer without notice from the employee.'" *Thomson v. Odyssey House*, 2015 WL 5561209, at \*19 (E.D.N.Y. Sept. 21, 2015) (quoting *Simmons v. N.Y.C. Transit Auth.* 2008 WL 2788755, at \*5 (E.D.N.Y. July 17, 2008)), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (summary order).

Moreover, plaintiff was reasonably accommodated: she was "allowed to stay and work at my cubicle at the [Manhattan] office" on the days when her coworkers were at the VMF. Pl. Opp. Decl. at 3. Her only disability-related complaint is that no *overtime* was available at the Manhattan office on those particular days. *Id.* Since voluntary overtime is not, by its very nature, an "essential function" of the job at issue, BOE's alleged failure to offer plaintiff overtime – for a matter of days at most – cannot satisfy the fourth element of her failure to accommodate claim. *See Konieczny v. N.Y. State Div. of Parole*, 647 F. Supp. 2d 256, 264 (W.D.N.Y. 2009) (offering allegedly disabled plaintiff overtime would be "'clearly ineffective' in assisting plaintiff with performing the essential requirements of her position"). I therefore respectfully recommend that the District Judge dismiss plaintiff's failure to accommodate claim under the NYCHRL.

---

[17] "Diabetic neuropathies are a family of nerve disorders caused by diabetes." *Diabetes*, Nat'l Inst. of Health, https://www.niddk.nih.gov/health-information/diabetes (last visited Feb. 3, 2017). According to the National Institutes of Health, approximately 60 to 70 percent of people with diabetes have some form of neuropathy. *Id.* People with diabetic neuropathies may experience a range of symptoms, from no symptoms to severe symptoms. *Id.* Consequently, not all people who have diabetic neuropathies are disabled.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that defendant's motion (Dkt. No. 26) be GRANTED and that the Second Amended Complaint be DISMISSED, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The Clerk is respectfully directed to mail a copy of this Report and Recommendation to the plaintiff.

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Valerie E. Caproni at 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Caproni. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: New York, New York
February 6, 2017

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**

30